1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MICHAEL GONZALES,

                Plaintiff,

    v.

J. LEAL, et. al.,

                Defendants.

_____/

CASE NO.    1:10-cv-02154-OWW-MJS (PC)

ORDER DISMISSING PLAINTIFFS'S COMPLAINT FOR FAILURE TO STATE A CLAIM

(ECF No. 2)

AMENDED COMPLAINT DUE SEPTEMBER 14, 2011

Plaintiff Michael Gonzales ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant action in Kings County Superior Court on August 17, 2010. (Notice of Removal Ex. A at 1, ECF No. 2.) Defendants were served on or about October 18, 2010. (Notice of Removal at 2.) Defendants filed a Notice of Removal on November 17, 2010. (Id.) Plaintiff filed a Motion to Remand on December 6, 2010. (Mot., ECF No. 7.) Plaintiff also filed Objections to Defendants' Notice of Removal. (Objections, ECF No. 8.) Plaintiff's Motion to Remand was addressed in the Court's August 5, 2011 Findings and Recommendation; the Court recommended that Plaintiff's Motion be denied. (ECF No. 9.)

Plaintiff''s original Complaint is now before the Court for screening.

///

///

## I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not.  Id. at 1949-50.

## II.   PLAINTIFF'S CLAIMS

Plaintiff is currently incarcerated at Corcoran State Prison.  He brings this action for alleged violations of his First Amendment right to petition the courts, his Fourteenth Amendment right to due process, his Eighth Amendment right to be free from cruel and unusual punishment, as well as violations of unspecified sections of the California Constitution.  Plaintiff names the following individuals as Defendants: B. Saunders, J. Leal, R. Cortez, J. Garcia, E. G. Hernandez, and K. Matta, in their individual and official capacities.  Plaintiff has also served Edmund G. Brown as a Defendant, even though he

1    is not named in Plaintiff's original Complaint.  (Notice of Removal Ex. A at 1.)[1]

2         Plaintiff alleges as follows:

3         Plaintiff's incoming and outgoing mail has been interfered with.  His self-created

4    artwork, poetry, books, and greeting cards, which he sells through the postal service, have

5    been confiscated by Defendants Garcia, Leal, and Hernandez.  These Defendants have

6    also given Plaintiff's artwork to other inmates. Defendants Leal and Hernandez have

7    destroyed Plaintiff's artwork.  Defendant Hernandez stole a copy of Plaintiff's books on May

8    20, 2010.  Defendant Leal stole a copy of Plaintiff's artwork on the same day.  Defendant

9    Leal stole copies of Plaintiff's books and drawings on June 14, 2010.  Plaintiff believes that

10   Defendants may have stolen his artwork due to racism and/or because of their sympathies

11   for a specific gang.

12        Plaintiff has also had problems with mailing his legal documents and has been

13   denied access to the courts as a result of Defendants' actions.  There appears to have

14   been at least five separate instances where Defendant was in some way prevented from

15   mailing his legal documents:

16        1.      On June 24, July 4, and July 10, 2010, Defendants Leal, Hernandez, and

17   Garcia returned Plaintiff's mailings on an excessive force claim against Defendants Cortez

18   by repeatedly stuffing them under his door.  Plaintiff's mailings were addressed to the

19   courthouse of the Eastern District of California at 1130 O Street, Fresno, CA.[2]  Defendants

20   Leal, Hernandez, and Garcia informed Plaintiff that this was the incorrect address.

21   Defendants returned these documents to him because they wanted to prevent him from

22   exercising his civil rights;

23        2.      On July 9, 2010, Plaintiff received an undelivered package that he had tried

24   to mail in connection with another case for excessive force against Defendant Cortez.

25   _____

26        [1] Plaintiff does not mention Defendants Saunders or Brown in any of his allegations in his
     Complaint.

27        [2] Judicial notice is taken that the Court's address is 2500 Tulare Street, Suite 6801, Fresno, CA.
28   Fed. R. Evid. 201(b).  Plaintiff was been previously informed of this in Gonzales v. Price, No. 07-cv-1391,
     2010 WL 4362829, *1 n.1 (E.D. Cal Oct. 28, 2010).

Plaintiff believes that Defendants Hernandez, Matta, and Cortez worked together to prevent this mailing from going out and that Defendant Matta was responsible for removing the brief from the mailing.  Even though this mailing contained legal documents, Plaintiff did not receive any legal mail verification slip when the mailing was returned to him;

3.      Plaintiff received returned mail on the <u>Gonzales v. Price</u>, matter, which he sent to the Eastern District of California using the 1130 O Street, Fresno, CA address;

4.      Plaintiff has tried to file a tort claim against Ben Velo and Brian Gupton but and has  received no response; and

5.      On July 17, 2010, Defendant Cortez removed  from Plaintiff's cell drawings that Plaintiff was going to use as exhibits in his excessive force case against Defendant Cortez.  Defendant Cortez returned the drawings to Plaintiff only after Plaintiff complained to Lieutenant Munoz.  Defendant Cortez did not return Plaintiff's legal mail envelopes in which the drawings were contained.  Defendant Cortez also made insulting comments to Plaintiff when he returned the drawings and referred to Plaintiff's mailings as "rat mail."

Plaintiff's daughter and his daughter's mother have been receiving derogatory letters from inmates.  Plaintiff alleges that prison officers[3] gave inmates the address of his daughter and his daughter's mother.  He also claims  that he has lost communication with his friends and family as a result of Defendants Leal, Garcia, and Hernandez's actions.

In addition to his mail related claims, Plaintiff believes that his food contains antipsychotic medications.  Plaintiff overheard correctional officers Beebe and Gadson[4] state that it would be possible to medicate prisoners' food.  Plaintiff believes that there was medication in his food because at some point, his tongue became numb after eating.  Plaintiff has hepatitis C and his liver could be damaged if he was forced to unknowingly take drugs.  Plaintiff does not have a mental disorder and he is not a threat to himself or others.  He alleges that medicated food causes blurry version, stomach acid, low blood

---

[3] Plaintiff does not specify who provided other inmates with the address for Plaintiff's daughter and his daughter's mother or any possible motive for such actions.

[4] Neither Beebe nor Gadson are named as defendants in this action.

pressure, bowel pain, constant urination, and short term memory loss, among other things. Plaintiff has had to take medications to counteract his stomach acid.

Plaintiff has made 602 appeals on these issues, but was unable to obtain copies of these appeals for the litigation at hand even though he made photocopy requests. Plaintiff sent in a photocopy request, but Defendant Hernandez informed Plaintiff that he would not be receiving his photocopies.

Plaintiff believes that in retaliation for exercising his civil rights, prison officials have called him names and have used other inmates to harass and mock him.

## III.   **ANALYSIS**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

### A.   **Interference with Mail**

Plaintiff claims that his First Amendment right to send and receive mail is being violated. The Court also infers that Plaintiff is alleging a Fourth Amendment violation based on Defendants Leal, Hernandez, Garcia, Cortez, and Matta's opening, inspecting, and confiscating his mail. Finally, Plaintiff may also be claiming that his due process rights are being violated because without prior notice, his legal mail is being interfered with and his personal mail is being stopped.

#### 1.   First Amendment Claim

Plaintiff claims his first Amendment right to send and receive mail is being violated.

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  However, there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison.  Thornburgh v. Abott, 490 U.S. 401, 407-408 (1989).  Prison officials have more leeway to regulate incoming than outgoing mail because of the greater security risks inherent in material coming into a prison.  Id. at 413.

a.    Incoming Mail

As stated above, prisoners enjoy a First Amendment right to send and receive mail. Witherow, 52 F.3d at 265 (citing Thornburgh, 490 U.S. at 407).  A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners.  Thornburgh, 490 U.S. at 413.

Prison officials have a responsibility to forward mail to inmates promptly.  Bryan v. Werner, 516 F.2d 233, 238 (3d Cir. 1975).  Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment.  Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996).  However, a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights.  Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband).

In this case, Plaintiff has not made any allegations regarding incoming mail.  He says that he has been cut off from communication with his family and friends but does not say whether or not this was due to interference with his incoming mail.  Moreover, Plaintiff does not attribute any  loss of communication ability to any specific Defendant.  He does not say if his incoming mail is delayed or never delivered.

-6-

1    Plaintiff is given leave to amend to his claim regarding lack of communication from

2    his family to state whether it is related to interference with his incoming and/or outgoing

3    mail to attribute the alleged interference to a particular named Defendant.

4                    b.      Outgoing Mail

5    With respect to outgoing correspondence from prisoners to non-prisoners, an

6    exception to the Turner standard applies.  Because outgoing correspondence from

7    prisoners does not, by its very nature, pose a serious threat to internal prison order and

8    security, there must be a closer fit between any regulation or practice affecting such

9    correspondence and the purpose it purports to serve.  Thornburgh, 490 U.S. at 411-12.

10   Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the

11   regulation furthers "an important or substantial government interest unrelated to the

12   suppression of expression" and (2) "the limitation on First Amendment freedoms must be

13   no greater than is necessary or essential to the protection of the particular governmental

14   interest involved."  Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other

15   grounds by Thornburgh, 490 U.S. at 413-14.

16   Plaintiff does not plead sufficient facts to establish that his First Amendment rights

17   have been violated by Defendants.  Plaintiff instead makes the conclusory statement that

18   his First Amendment rights have been violated because he is unable to petition the courts,

19   and that his artwork, poetry, books, and greeting cards have been confiscated by

20   Defendants Garcia, Leal, and Hernandez.  Plaintiff does not say whether or not the

21   interception and delay of his outgoing mail was greater than necessary to protect the

22   governmental interest in order and security of a prison or whether the limitation on his First

23   Amendment rights was greater than necessary to protect the government interest involved.

24   Plaintiff fails to describe how long the delay in mail delivery was, whether the mailings in

25   question were ever delivered, whether there is a prison regulation for inspecting mail,

26   whether such a regulation furthered a government interest, and whether the government

27   imposition was greater than necessary.  Accordingly, Plaintiff has failed to demonstrate that

28   the interception and delay of his outgoing mail constitutes a violation of a constitutionally

1  protected liberty interest.  Denton v. Bowman, 2008 WL 755798, *1 (S.D.Cal. March 19,

2  2008) (adopting Report and Recommendation which dismissed Plaintiff's complaint for

3  failing to show that delay in processing his mail constituted a violation of his liberty

4  interest).

5      The Court grants Plaintiff leave to amend his Complaint and plead sufficient facts

6  to state a claim for interference with his outgoing mail.

7                    2.    Fourth Amendment Claim

8      As noted, it appears Plaintiff may also be alleging a Fourth Amendment violation

9  based on Defendants Leal, Hernandez, Garcia, Cortez, and Matta opening and inspecting

10  his mail and confiscating Plaintiff's books, artwork, poetry, and legal material, among other

11  items.  The Fourth Amendment "protects two types of expectations, one involving

12  'searches,' the other 'seizures.'  U.S. v. Jacobsen, 466 U.S. 109, 113-11 (1984).

13                    a.    Search

14      Prisoners have very limited Fourth Amendment rights while incarcerated.  United

15  States v. Vallez, 653 F.2d 403, 406 (9th Cir. 1981) receded from on other grounds by

16  United States v. Goseyun, 789 F.2d 1386 (9th Cir. 1986) and citing  Stroud v. United

17  States, 251 U.S. 15, 21-22 (1919).   Prison officials are generally entitled to monitor

18  outgoing nonprivileged, non-legal mail.  See Stroud 251 U.S. at 21-22 (interception of

19  inmate's mail does not violate the Fourth Amendment); Smith v. Shimp, 562 F.2d 423, 425

20  (7th Cir. 1977) (interest of state in monitoring nonprivileged correspondence justifies minor

21  burdens placed on freedom to communicate with friends and relatives); United States v.

22  Kelton, 791 F.2d 101, 102-103 (8th Cir. 1986) (rejecting contention that regulations

23  authorizing prison officials to read and copy nonprivileged mail violate inmate's Fourth

24  Amendment rights); Yancey v. Jenkins, 638 F.Supp. 340, 341 (N.D.Ill. 1986) ("It is settled

25  law that prisoners have no legitimate expectation of privacy in their [nonprivileged]

26  correspondence"); Murphy v. Morris, 849 F.2d 1101, 1104-05 (8th Cir. 1988).

27      Plaintiff has not alleged that any privileged correspondence was searched. Mailings

28  to the court are not considered privileged.  See Keenan v. Hall, 83 F.3d 1083, 1094 (9th

1   Cir. 1996) (prison's inmate's mail from court, unlike from an inmate's lawyer, is not "legal

2   mail").   Plaintiff has no legitimate expectation of privacy in his nonprivileged

3   correspondence, and therefore cannot show a Fourth Amendment violation.  If Plaintiff

4   chooses to file an amended complaint, he should omit any claim under the Fourth

5   Amendment arising out of the search of his nonprivileged mail.

6                              b.    Seizure

7          Under the Fourth Amendment, a seizure of property "occurs when there is some

8   meaningful interference with an individual's possessory interest in that property."

9   Jacobsen, 466 U.S. at 113.  The United States Supreme Court has held that "the Fourth

10  Amendment has no applicability to a prison cell."  Hudson v. Palmer, 468 U.S. 517, 536

11  (1984).  Further, the Court noted, "[p]rison officials must be free to seize from cells any

12  articles which, in their view, disserve legitimate institutional interests."  Id. at 528 n.8.

13         Because there is no Fourth Amendment applicability in a prison cell, any claim

14  raised by Plaintiff in this regard fails.  Therefore, if Plaintiff chooses to file an amended

15  complaint, he should omit any claim arising out of the seizure of materials from his cell.

16                        3.    Due Process Claims

17         Plaintiff asserts that his due process rights were violated when Defendants Leal,

18  Hernandez, Garcia, Cortez, and Matta  wrongfully seized his books, artwork, poetry, legal

19  material, and other items from his mail.

20                        a.    Mailings  Containing  Books,  Artwork,  Poetry,  and
                                Correspondence with Family
21         The Due Process Clause protects prisoners from being deprived of property without

22  due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a

23  protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir.

24  1974). However, whether intentional or negligent, "[a]n unauthorized intentional deprivation

25  of property by a state employee does not constitute a violation of the procedural

26  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

27  postdeprivation remedy for the loss is available."  Hudson 468 U.S. at 533.

28

1    Plaintiff claims that books, artwork, poetry, personal correspondence, and other

2   items were confiscated.  Whether or not this deprivation was intentional or negligent, there

3   was no violation of Plaintiff's due process rights because the law is clear that California

4   provides an available post deprivation remedy.  See, e.g., Barnett v. Centoni, 31 F.3d 813,

5   816-17 (9th Cir. 1994) ("California Law provides an adequate post deprivation remedy for

6   any property deprivations.")  Therefore, the unauthorized deprivation of Plaintiff's personal

7   property cannot sustain a federal Due Process Clause claim.  Hudson, 468 U.S. at 533.

8    Plaintiff has therefore failed to state a claim upon which relief could be granted

9   under Section 1983 for his non-legal property.  Because Plaintiff could not allege facts that

10   would make this claim cognizable, he should omit this claim from his amended complaint

11   if he chooses to file one.

12                              b.       Mailings to the Court

13    Prisoner's protected right of access to the courts could be violated if prison mail

14   procedures actually impair or hinder a prisoner's presentation of grievances or the

15   prosecution of litigation.  See Royse v. Superior Court of the State of Washington, 779

16   F.2d 573, 575 (9th Cir. 1986); see also Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.

17   1989) (in order to state a claim for denial of access to courts, an inmate must show a

18   specific instance in which he was actually deprived of access to court).  Denial of access

19   to the courts claims may arise from the frustration or hindrance of "a litigating opportunity

20   yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that

21   cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403,

22   412-15 (2002).  To state such a claim, a plaintiff must allege facts demonstrating that he

23   suffered an actual injury by being shut out of court.  Harbury, 536 U.S. at 415; Lewis v.

24   Casey, 518 U.S. 343, 351 (1996).  In other words, a claim for deprivation of the

25   constitutional right of access to the courts must allege both the underlying cause of action,

26   whether that action is merely anticipated or already lost, and the official acts that frustrated

27   the litigation.  Harbury, 536 U.S. at 415-16.

28

1    Plaintiff has alleged that on five separate occasions prison officials interfered with

2    his mailings to various courts.  In none of these five occasions does Plaintiff allege that he

3    suffered an actual injury as a result of the interference.

4    In first incident, he alleges that Defendants Leal, Hernandez, and Cortez returned

5    his legal mail to him on June 24, July 4, and July 10, 2010 because they were trying to

6    harass him.  However, Plaintiff sent these documents to an incorrect address for the

7    Eastern District of California, so any actual injury that Plaintiff suffered was of his own

8    making.  Plaintiff also used the incorrect address in the third incident, where Plaintiff had

9    returned mail on the Gonzales v. Pine 10-cv-1314-LJO-MJS matter.  Because any harm

10   caused to Plaintiff was of his own making, Plaintiff should not include these incidents in his

11   amended complaint if he chooses to file one.

12   In the second incident, Plaintiff alleges that on July 9, 2010, he received an

13   undelivered package of his mail on his other case against Defendant Cortez for excessive

14   force.  Plaintiff appears to be referring to Gonzales v. Cortez, 1:10-cv–1314, which was

15   terminated on November 10, 2010, due to Plaintiff's failure to pay the filing fee.  Plaintiff

16   alleges that Defendants Leal, Hernandez, Cortez, and Matta worked together to remove

17   the brief contained in this package and prevent it from being delivered.  However, Plaintiff

18   does not clearly describe how these Defendants conspired to prevent delivery of these

19   legal documents, and whether he suffered any actual injury by being shut out of the court.

20   Because Plaintiff's excessive force case was dismissed for failure to pay the filing fee,

21   Plaintiff has not shown that he was likely to succeed in the underlying litigation and he has

22   not likely suffered an injury.  However, since Plaintiff may be able to include sufficient facts

23   to state a claim, the Court will grant him leave to amend.

24   In the fourth incident, Plaintiff alleges that he sent mail for filing a tort claim against

25   Ben Velo and Brian Gupton.  Plaintiff has not received any response to this tort claim.

26   Plaintiff does not say where or when he tried to file this tort claim, nor has he identified

27   actual injury to his ability to access to the courts.  Plaintiff will be given leave to amend this

28

1 claim.

2       In the fifth incident, Plaintiff alleges that on or around July 9, 2010, Defendants Leal

3 and Hernandez removed artwork from Plaintiff's cell that Plaintiff intended to file as exhibits

4 in his excessive force case against Defendant Cortez.  Plaintiff does not state whether or

5 not he suffered an actual legal injury from Defendant's actions, and it appears that this

6 matter was dismissed due to Defendant's failure to pay the filing fee.  Plaintiff will be given

7 leave to amend this claim and is required to show how the confiscation of his drawings

8 caused him actual injury.

9       **B.   Medication**

10      Prisoners possess "a significant liberty interest in avoiding the unwanted

11 administration of antipsychotic drugs under the Due Process Clause of the Fourteenth

12 Amendment."  Washington v. Harper, 494 U.S. 210, 221-22 (1990) (citations omitted).

13 "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious

14 mental illness with antipsychotic antipsychotic drugs against his will, if the inmate is

15 dangerous to himself or others and the treatment is in the inmate's medical interest."

16 Washington, 494 U.S. at 227. While Plaintiff alleges that the named defendants medicated

17 his food, he does not provide enough detail for the Court to determine whether the alleged

18 administration of medication was against his will or pursuant to direction from a physician.

19      Plaintiff alleges that unnamed prison officials were engaged in an effort to medicate

20 him. Plaintiff does not provide any details for the Court to determine if his food ever

21 contained medications.  Plaintiff's allegations rest on statements made by non-parties that

22 it was possible to add medications to an inmate's food.  Plaintiff believes that his food was

23 medicated because his tongue went numb after eating  and he has had to take medication

24 for stomach acid.  Plaintiff also is under the impression that his food was medicated

25 because unnamed defendants are collectively acting to discourage him from proceeding

26 with his litigation activities.

27      The Court simply cannot find that Plaintiff's claims state a plausible claim for relief.

28

1   Common sense and judicial experience leads this Court to conclude that these claims as

2   presented are facially implausible.  Because amendment of this claim would be futile,

3   Plaintiff should not include this claim in his amended complaint if he chooses to file one.

4           **C.      Retaliation Claim**

5           It appears that Plaintiff is making a claim that Defendants are retaliating against him

6   for pursuing his constitutional rights, i.e., that Defendants Leal, Garcia, Hernandez, Cortez,

7   and  Matta  directed  continued  interference  with  his  mail  and  unnamed  Defendants

8   medicated his meals after Plaintiff filed a grievance for interference with his mail.

9           "Within the prison context, a viable claim of First Amendment retaliation entails five

10   basic elements: (1) An assertion that a state actor took some adverse action against an

11   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

12   the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

13   advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th

14   Cir. 2005).

15           Plaintiff describes the adverse action as interference with his personal and legal

16   mail.  Plaintiff also describes another adverse action as interference with his food.  Both

17   of these actions satisfy the first prong.

18           The second element of a prisoner retaliation claim focuses on causation and motive.

19   See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his

20   protected  conduct  was  a  "'substantial'  or  'motivating'  factor  behind  the  defendant's

21   conduct."  Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

22   1989).  Although it can be difficult to establish the motive or intent of the defendant, a

23   plaintiff may rely on circumstantial evidence.  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.

24   2003) (finding that a prisoner established a triable issue of fact regarding prison officials'

25   retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines

26   v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th

27   Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory

28

1   intent"). Plaintiff relies on circumstantial evidence to plead that Defendants are adding

2   medication to his meals in retaliation for his efforts to exercise his civil rights. It is unclear

3   why Plaintiff believes that his efforts to exercise his civil rights resulted in Defendants

4   medicating his meals, and Plaintiff does not state whether these alleged actions were

5   taken before or after Plaintiff started filing his numerous lawsuits. As such, the Court

6   cannot conclude that any medication of his food was related to his litigation activity.

7       Plaintiff also states that Defendants Cortez, Garcia, Hernandez, Leal, and Matta

8   have interfered with his legal and personal mail as a result of his efforts to exercise his civil

9   rights. But Plaintiff never pleads that Defendants interfered with his mail because of his

10  legal filings, and instead Plaintiff just states that unnamed individuals are trying to stop him

11  from exercising his rights. As pleaded, Plaintiff has failed to establish causation and

12  motive sufficient to satisfy the second prong of his retaliation claim based on his allegations

13  of interference with his mail and food.

14      Filing a grievance is a protected action under the First Amendment. Valandingham

15  v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is

16  also protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.

17  1985). The Court is unsure as to which of Plaintiff's many legal filings he is referring to

18  when he claims that he is being retaliated against. Either way, Plaintiff has satisfied the

19  third prong of the retaliation standard.

20      With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape

21  liability for a First Amendment violation merely because an unusually determined plaintiff

22  persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d

23  1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts

24  would chill or silence a person of ordinary firmness from future First Amendment activities.

25  Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). Plaintiff has

26  not satisfied the fourth prong with respect to his claim that his food has been medicated

27  without his knowledge, because Plaintiff has failed to plead sufficient facts to establish that

28

1    his food was ever medicated.  Plaintiff has satisfied this prong for the interference with his

2    mail, as having his mail confiscated and/or returned to him without mailing would chill a

3    person of ordinary firmness from future First Amendment activities.

4            With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison

5    authorities' retaliatory action did not advance legitimate goals of the correctional institution

6    or was not tailored narrowly enough to achieve such goals."  Rizzo, 778 F.2d at 532.

7    Though this is not a high burden, see id. (prisoner's allegations that search was arbitrary

8    and capricious sufficient to satisfy this inquiry), Plaintiff has failed to allege any facts

9    regarding whether the alleged seizure of his mail and medicating of his food failed to

10   achieve a legitimate penological goal.  Absent an allegation that the reason for the delays

11   in receiving mail did not advance a legitimate penological interest, Plaintiff cannot satisfy

12   the fifth prong of a retaliation claim.  As previously noted, it seems that prison officials were

13   "confiscating" and returning Plaintiff's mail, at least in part, because it contained the wrong

14   address for the Court.

15          Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his

16   retaliation claim, the Court finds that he has failed to state a claim upon which relief could

17   be granted.  As the Court views septically Plaintiff's allegations that Defendants are

18   medicating his food, Plaintiff would be well served to devote his attention to his claims that

19   Defendants retaliated against him by interfering with his mail.  Plaintiff will be given leave

20   to amend this claim and is required to show how all five prongs required for a retaliation

21   claim have been met.

22   **IV.    CONCLUSION AND ORDER**

23          The Court finds that, as pled, Plaintiff's Complaint fails to state a claim upon which

24   relief could be granted.  The Court will provide Plaintiff time to file an amended complaint

25   to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809

26   F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff should read this Screening Order carefully

27   before preparing his amended complaint.

28

1    In his Amended Complaint, Plaintiff must demonstrate that the alleged incident

2  resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49.  Plaintiff

3  must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"

4  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).   Plaintiff must also

5  demonstrate that each named Defendant personally participated in a deprivation of his

6  rights.  Jones, 297 F.3d at 934.

7    Plaintiff should note that although he has been given the opportunity to amend, it

8  is not for the purpose of adding new claims.  Plaintiff should focus his Amended Complaint

9  on the violation of his First Amendment and due process rights, and how individuals have

10  retaliated against him as a result of his efforts to exercise his civil rights.

11    Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint

12  be complete in itself without reference to any prior pleading.  As a general rule, an

13  amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55,

14  57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer

15  serves any function in the case.  Therefore, in an amended complaint, as in an original

16  complaint, each claim and the involvement of each defendant must be sufficiently alleged.

17  The amended complaint should be clearly and boldly titled "Amended Complaint," refer to

18  the appropriate case number, and be an original signed under penalty of perjury.

19    Based on the foregoing, it is HEREBY ORDERED that:

20    1.    Plaintiff's Complaint is dismissed for failure to state a claim, with leave to file

21          an amended complaint by September 14, 2011;

22    2.    Plaintiff shall caption the document "Amended Complaint" and refer to the

23          case number 1:10-cv-2154-OWW-MJS (PC); and

24    3.    If Plaintiff fails to comply with this order, this action will be dismissed for

25  ////

26  ////

27  ////

28

1  failure to prosecute and failure to state a claim upon which relief may be granted.

2

3

4  IT IS SO ORDERED.

5  Dated:    August 16, 2011              /s/ *Michael J. Seng*
6  ci4d6                         UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28